[Sac. No. 4401. In Bank.—August 25, 1931.]

FRANK CASEY, Appellant, v. S. NISHIHARA et al., Respondents.

Russell W. Cantrell for Appellant.

Russell P. Tyler for Respondents.

CURTIS, J.—This action was brought by the plaintiff claiming to be the owner of certain real property in the possession of the defendant, for the purpose of obtaining possession of said real property. The defendant held said real property under a lease from one F. E. Johnson and the court permitted said Johnson to intervene in said action, and under said permission he filed a complaint in intervention

in said action in which he asserted his ownership to said real property and the defendant's right to said possession thereof under a lease from said intervener.

To secure the proper background of the relations existing between the parties to this action at and immediately prior to the commencement of this action it might be well to briefly trace the dealings carried on by them for a period of seven or eight years prior to the commencement of this action. At the inception of these dealings Johnson was the owner of the real property which forms the subject matter of this action. At that time he borrowed from the plaintiff a sum of money, the exact amount of which does not appear, but it was probably the sum of $5,000. For this amount he gave his promissory note and secured the payment of said note by a mortgage on said real property. This note and mortgage remained outstanding and unpaid for some three or four years, or possibly five; the exact period does not appear from the record. That point is not material. Johnson was greatly in arrears in payment of his interest on said note and the plaintiff, some time in 1926, brought suit for the foreclosure of said mortgage. Before this action reached final judgment and on January 6, 1927, the parties to said action adjusted their differences by Johnson giving a new note, covering his prior indebtedness to the plaintiff, certain delinquent taxes on the real property which the plaintiff had paid, and other delinquent taxes against said real property which had not been paid. This promissory note was secured by a trust deed given upon said real property. The amount of this note was $14,340.72, and it was made up of the following items:

Balance due on first note................$7,406.83
Delinquent taxes paid by plaintiff........ 5,422.66
Delinquent taxes not paid............... 537.07
Other delinquent taxes not paid.......... 1,974.16

These items amount to $15,340.72. Of this amount the plaintiff released Johnson from the payment of $1,000, which amount deducted from the aggregate amount due plaintiff left the sum of $14,340.72, the amount of the later or second promissory note executed by Johnson in favor of plaintiff. It will be noted that in this note were included two items for delinquent taxes which had not been paid. Plaintiff agreed to pay all of these delinquent taxes. The

item of $537.07 plaintiff paid following the execution and delivery of the note, but the plaintiff never did pay the other item of $1974.16. This second note was dated January 6, 1927, and bore interest at seven per cent per annum payable monthly. It was payable eighteen months after date with a proviso that if the interest was not paid within ten days after it became due, then the whole sum of principal and interest at the option of the holder should become due and payable. Johnson paid the interest on the whole of the principal sum of said promissory note, including the sum of $1974.16 up to February 6, 1928, the last payment having been on February 29, 1928. The trust deed given to secure the payment of said note contained a covenant that, "No default or breach under any of the terms of this trust deed shall be claimed until the maker of the obligation for which it is security shall have been served with a copy of written notice of such breach, and the privilege of curing same within ten days thereafter shall have been accorded them."

On May 24, 1928, plaintiff caused to be served upon Johnson in pursuance of the foregoing stipulation in the trust deed a notice of default in the payment of the interest due on said promissory note and in the payment of taxes due upon said real property. No interest or other payment was made by Johnson to the plaintiff on account of the amounts due on said promissory note and trust deed. Thereafter the trustees under said deed of trust, after due and legal notice as provided by law and in accordance with the terms of said trust deed, sold said real property to satisfy the amounts due plaintiff on said promissory note. At this sale the plaintiff, Frank Casey, became the purchaser of said real property and by virtue of this purchase he claims to be the owner of said real property and entitled to the possession thereof. The trial court made findings against the plaintiff and rendered judgment in favor of the defendant Nishihara and adjudged the intervener to be the owner of said real property, subject only to the rights of plaintiff under and by virtue of said trust deed.

The basic finding upon which the trial court rested its judgment against plaintiff and in favor of defendant intervener was "that on the said 24th day of May, 1928, at the time that the said notice was so served by the said plaintiff,

Frank Casey, upon the said F. E. Johnson, defendant in intervention, as aforesaid, that the said F. E. Johnson, defendant in intervention, was not in default of any of the provisions of said deed of trust requiring him to pay taxes upon the said real property described in said deed of trust and hereinabove described, as aforesaid, and the court further finds that at the time of the service of said notice, as aforesaid, the said defendant in intervention, F. E. Johnson, was not in default in the payment of interest on the said principal sum owing by said defendant in intervention, F. E. Johnson, to the said plaintiff, Frank Casey, as evidenced by the said promissory note of which the said deed of trust was executed, as aforesaid, and in this respect the court finds that on the date of the service of the said notice as aforesaid that said plaintiff, Frank Casey, was indebted to the said defendant in intervention, F. E. Johnson, in the sum of one hundred twenty-three and 89/100 dollars ($123.89) as will be hereinafter more specifically set forth and referred to.''

The court then proceeds to find that the amount of interest due and unpaid on the promissory note of $14,340.72 on May 24, 1928, the date Johnson was served with the notice of default, was the sum of $216.48. It further found that of said sum of $14,340.72, the sum of $1974.16 was retained by Casey for the purpose of paying the delinquent taxes on said real property, and that Casey had never paid any of said delinquent taxes; that in paying the interest on the entire principal sum of said promissory note from January 6, 1927, to February 6, 1928, Johnson had paid interest on said sum of $1974.16, and the amount of interest paid on this sum of $1974.16 by Johnson from January 6, 1927, to February 29, 1928, was $149.70. The court further finds, ''that on the date of said service of the said notice by the said plaintiff, Frank Casey, upon the said defendant in intervention, F. E. Johnson, that the said defendant in intervention, F. E. Johnson, was entitled to a further credit from the plaintiff, Frank Casey, in the further sum of one hundred ninety and 67/100 ($190.67), being seven per cent on the said sum of nineteen hundred and seventy-four and 16/100 dollars ($1,974.16) retained by the said plaintiff Frank Casey for the purpose of redeeming the said property from said tax sale, as aforesaid, which said seven per cent was added to

the said sum necessary to redeem said property at the time of the execution of said note to the date of the service of said notice, by reason of the statutes in such case made and provided . . . '' The court then proceeds to add these two amounts to $149.70 and $190.67 together, thereby securing the larger amounts of $340.37, which latter amount the court found Johnson was entitled to as a credit against the interest due from him on May 24, 1928. This interest, as we have seen, amounted to $216.48, which deducted from the credit of $340.37, leaves the sum of $123.89, which amount the court found Casey was indebted to Johnson on May 24, 1928, at the date the notice of default was served. As conclusions of law from these facts the court found that as Johnson was not in default, the notice was prematurely given and all proceedings thereafter looking toward the sale of said real property under said trust deed were illegal and the deed issued to Casey by the trustees was a nullity. It is apparent that if the findings of the trial court are supported by the evidence the conclusions drawn therefrom are correct and the judgment must be affirmed.

There is no question but that Johnson was entitled to a credit on the interest due from him on May 24, 1928, in the sum of $149.70, being the interest paid by him from the date of said note to February 29, 1928, on the sum of $1974.16, which Casey was to pay on the delinquent taxes, but which he never did pay. This sum of $1974.16 Casey had agreed to pay out and advance for Johnson and it was upon the understanding and agreement that he would do so that this amount was included in the promissory note secured by the trust deed. As Casey failed to advance this sum, Johnson never became indebted to him in this amount. Nevertheless, Johnson paid interest thereon, amounting to said sum of $149.70. This payment was rightly credited on the amount of interest Johnson owed and reduced this latter amount to the extent of said sum of $149.70. As to the item of $190.67, we question the action of the court in giving credit in this amount to Johnson on the interest due from him. It appears to us that the court gave a double credit to Johnson in allowing both of these amounts as credits in favor of Johnson on his interest account. If Casey had paid these delinquent taxes then Johnson was no doubt in default in the sum of at least $216.48. Having neglected

to make the payment of $1974.16, Casey was not entitled to interest thereon and for that reason said sum of $149.70 was correctly credited to Johnson. Having received credit for this amount he is not entitled to a further credit in the amount of the interest accumulating on the delinquent taxes which Casey failed to pay. The delinquent taxes, the court found, bore interest at seven per cent per annum the same as provided in the promissory note given by Johnson to Casey. Therefore the detriment suffered by Johnson through Casey's failure to pay said delinquent taxes was completely offset and met by the credit Johnson received by reason of his overpayment of interest. To hold otherwise would be to give Johnson credit of fourteen per cent for the failure of Casey to pay an indebtedness bearing only seven per cent interest. We can see no escape from this conclusion. It follows, therefore, that the findings of the court are not sustained by the evidence and particularly that which finds Johnson was not in default in the payment of interest on said promissory note on May 24, 1928, the date said notice of default was served on him. To the contrary, the undisputed facts show that he was in default in the sum of $216.48, less the sum of $149.70, or $66.78.

While this conclusion may result in Johnson losing his property, from the facts above stated it seems to us that he has no one to blame but himself. It further appears to us that Casey has been extremely lenient with Johnson and has been slow to take advantage of Johnson's numerous defaults and delinquencies. In the first place, the undisputed evidence is that Johnson borrowed some $5,000 from Casey a few years prior to January 6, 1927. The exact date does not appear in the record, but is not material. Johnson failed to pay the interest on this loan and Casey was compelled to institute an action to foreclose the mortgage given to secure its payment. At that time it appears that not only a large amount of interest, over $2,000, was due, but $5,422.66 in delinquent taxes had accumulated against the mortgaged property which Casey was compelled to pay. While this foreclosure action was pending Casey agreed to dismiss it and give Johnson another chance to save his property. A new note dated January 6, 1927, secured by a trust deed was made out which included the several amounts due from Johnson to Casey, with the stipulation that the interest thereon was to

be paid monthly. The interest on this entire note amounted to only $83.65 per month. On January 1, 1928, Johnson leased the real property covered by the trust deed to the defendant Nishihara for the sum of $235 per month, the lease covering a period of ten years. This rental was payable monthly in advance. We, of course, do not know the condition of Johnson's financial affairs, but it would seem that his first duty to Casey as well as to himself would have been to devote sufficient of the rental received from the real property covered by the trust deed in payment of the interest on the indebtedness secured by the trust deed. Not only did he fail to meet his interest promptly, but he permitted it to become over three months in arrears, from February 6 to May 24, 1928, during which time he received as rental from this real property over $700, which amount far exceeded the amount of the delinquent interest. It would appear from the record before us that he made no reasonable attempt to meet his interest engagements with Casey, while he was appropriating to his own use the entire proceeds of said real property. On the other hand, the evidence shows that Casey was extremely lenient and indulgent in his dealings with Johnson. Not only did he permit a large amount of interest on the first loan to become delinquent before taking any action to enforce its payment, but he preserved Johnson's property from sale for delinquent taxes by paying them after they amounted to over $5,400. After the making of the new note and the trust deed, Johnson was frequently delinquent in the payment of his interest, but Casey took no action toward foreclosing the trust deed until Johnson apparently ceased entirely making payments on his interest and allowed over three months to go by without meeting a single installment of interest. We hardly see how Johnson could have expected treatment more generous than that accorded to him by Casey. It is true that Casey did not pay, as the court found he had agreed, the delinquent taxes amounting at the time of the new note to $1974.16. In explanation of his neglect to pay this amount, Casey testified that he agreed to pay it as soon as he was able; that he had just paid out in satisfaction of other delinquent taxes against said real property $5,400, and he was unable to meet this additional payment of $1974.16. As long as he agreed to pay these taxes he should be held to his agreement. He should hold

Johnson harmless for his failure to perform his agreement and should be made to answer to Johnson for all damage sustained by reason of this failure on his part. This damage to Johnson has been adjusted by us in the manner set forth in previous portions of this opinion. This is the only instance in which Casey has failed in his engagements during the many years these parties have dealt with each other. On the other hand, there has been during all these years hardly any appreciable period of time in which Johnson has not been in default in meeting one or the other of his agreements with Casey. That he may lose his property, which is apparently of considerable value, through foreclosure proceedings is to be deplored, but this result must necessarily follow the course of conduct pursued by him and is due solely to his own failure to meet his lawful and legal engagements.

The judgment is reversed.

Preston, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.